IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | COMPLAINT |
| DHL SUPPLY CHAIN (USA), | ) ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a) (Title VII) and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex, female, and to provide appropriate relief to Tazaria Gibbs (Gibbs) and other aggrieved current and former female employees as a class who were harmed by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges Defendant DHL Supply Chain (USA) (DHL) subjected Gibbs and other aggrieved current and former female employees as a class to ongoing unwelcome sexual harassment, resulting in a sexually hostile work environment, and then retaliated against Gibbs for complaining about the harassment by terminating her employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f)(1), §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and 42

U.S.C. §2000e-2(a) and 2000e-3(a), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## THE PARTIES

3. Plaintiff, Equal Employment Opportunity Commission (the Commission), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, DHL has continuously been a foreign corporation doing business in the State of Tennessee, in the City of Memphis, and has continuously had at least fifteen (15) employees.

5. At all relevant times, DHL has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty (30) days before the institution of this lawsuit, Gibbs filed a charge of discrimination with the Commission alleging violations of Title VII by DHL.

7. On August 15, 2024, the Commission issued to DHL a Letter of Determination finding reasonable cause to believe DHL violated Title VII, and invited DHL to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief.

8. The Commission engaged in communications with DHL to provide DHL with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from DHL a conciliation agreement acceptable to the Commission.

10. On September 19, 2024, the Commission issued DHL a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

12. DHL, a leading supply chain logistics services provider in the Americas, provides supply chain design, consulting, warehousing, fulfillment, and transportation services to companies throughout the nation, including in Tennessee.

13. DHL's United States headquarters is located in Westerville, Ohio.

14. DHL employs over 40,000 employees in the United States, Canada, and Latin America at more than 500 sites.

15. DHL operates warehouses in Memphis, including at its site located on Tchulatech Drive, Memphis, Tennessee.

16. When DHL onboards employees, DHL requires its employees to acknowledge receipt of its Associate Handbook and Workplace Harassment Policy (Policy).

17. The Policy prohibits discrimination against any associate or applicant for employment because of, among other things, sex, and sexual harassment.

18. The Policy subjects any individuals who engage in such behavior to disciplinary action, up to and including termination of employment.

19. DHL expects associates to report incidents of harassment and/or retaliation as soon as possible to their supervisor, facility manager, the Human Resources representative, and/or the director of operations; and to cooperate fully in any subsequent investigation.

20. DHL also requires supervisors to report and take seriously complaints of harassment.

21. DHL represents it will promptly investigate the allegations and communicate the results to the complaining party.

## STATEMENT OF CLAIMS

### I.   SEXUAL HARASSMENT CLAIM OF GIBBS

22. Since at least on or around October 2021, Defendant engaged in unlawful employment practices at its facility located at 3300 Tchulatech Drive in Memphis, Tennessee 38118, in violation of Sections 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

23. The unlawful employment practices include subjecting Gibbs to unwelcome sexual harassment and a sexually hostile work environment because of her sex, female.

24. DHL hired Gibbs as a tasker on October 27, 2021; she worked the second shift, Monday through Friday, from 4:00 p.m. to 12:30 a.m.

25. On November 8, 2021, a week or so after DHL hired Gibbs, DHL hired Donterious Thomas (Thomas) as an operations manager.

26. Thomas supervised three supervisors and 75 employees, including Gibbs.

27. Thomas' authority included recommending the immediate termination of employees.

28. Human Resources' review of termination recommendations was ministerial - recording the information, signing off on the action, and providing notice to the terminated employee.

29. After Thomas' hire, Thomas began appearing in Gibbs' work area and made daily comments to her about her looks, body, and clothes.

30. Thomas told Gibbs she looked good, asked her several times to go out on dates, inquired about Gibbs romantic relationships, questioned if she had kids, and shared what he wished to do to her sexually.

31. Thomas would tell Gibbs, "I like your shape" and comment, "You're showing too much."

32. Thomas offered Gibbs a promotion in exchange for dating him, but she declined the offer.

33. Thomas constantly tried to get Gibbs alone with him to discuss personal, non-work-related matters.

34. Gibbs avoided involvement with Thomas as much as possible because she feared he could fire her for any reason.

35. Around November 2021, Gibbs told Senior Operations Manager Tony McComb (McComb) about the comments Thomas made about her body.

36. McComb laughed and told Gibbs that Thomas likely made the comments because she was a decent-looking woman.

37. In front of McComb, Gibbs told Thomas she felt uncomfortable around him.

38. McComb admits Gibbs told him that Thomas made her uncomfortable because he was "flirtatious" and comes across as "sexual."

39. McComb did not report Gibbs' complaints to the human resources office.

40. Keyonday Nelson (Nelson), a former DHL forklift driver, heard Thomas proposition Gibbs three times.

41. Nelson also heard Thomas complimenting Gibbs and exclaiming to another manager, "You see what she's wearing."

42. In early December 2021, Gibbs learned McComb had been promoted and Alec Watson (Watson), a new hire who reported to Thomas, would become her supervisor.

43. Upon learning Watson would become her supervisor, Gibbs approached Watson while he was with McComb, to share her reasons for not wanting to be alone with Thomas.

44. Gibbs told Watson and McComb that Thomas made her uncomfortable and he was "always hitting [making sexual advances] on me."

45. Watson, who was new to the job and unfamiliar with the workplace polices and rules, told Gibbs to remain in her office to avoid Thomas.

46. Around December 17, 2021, Gibbs attended a meeting with Thomas and Watson to discuss her performance.

47. Watson told Gibbs she was doing a good job.

48. During the meeting, Thomas asked to speak with Gibbs, one-on-one.

49. Gibbs immediately asked Watson to remain in the room.

50. When Gibbs turned to Thomas to see what he wanted, Thomas had nothing to say.

51. The meeting ended very awkwardly, and Thomas and Watson left the area.

52. Watson did not report Gibbs' complaints of harassment.

53. The unwelcome sexual harassment experienced by Gibbs was sufficiently severe or pervasive to alter the terms and conditions of her employment and to create a sexually hostile work environment.

54. The harassment detailed above unreasonably interfered with Gibbs' work environment.

55. The effect of the unlawful practices complained of above has been to deprive Gibbs, of equal employment opportunities and otherwise adversely affect her status as employees because of her sex.

56. The unlawful employment practices complained of above are part of a continuing course of sex discrimination perpetrated by DHL against Gibbs at its facility located at 3300 Tchulatech Drive in Memphis, Tennessee 38118, that persisted since at least October 2021.

57. The unlawful employment practices complained of above were intentional.

58. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Gibbs.

## II. SEXUAL HARASSMENT CLAIMS OF A CLASS OF AGGRIEVED FEMALE EMPLOYEES

59. Since at least October 2021, DHL has engaged in unlawful employment practices at its Tennessee facilities in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

60. The unlawful employment practices also include subjecting a class of aggrieved current and former female employees, including but not limited to Antoniria Taylor (Taylor), Jasmine Davis (Davis), Lakesha Daughtery (Daughtery), Patrice Carter (Carter), Christina Floyd (Floyd), Anaiya Green (Green), Marquita Jordan (Jordan), and Seynabou Bane (Bane), to a sexually hostile work environment because of their sex, female.

61. When DHL onboards employees, DHL requires its employees to acknowledge receipt of its Policy.

62. The Policy prohibits discrimination against any associate or applicant for employment because of, among other things, sex, and sexual harassment.

63. The Policy subjects any individuals who engage in such behavior to disciplinary action, up to and including termination of employment.

64. DHL expects associates to report incidents of harassment and/or retaliation as soon as possible to their supervisor, facility manager, the Human Resources representative, and/or the director of operations; and to cooperate fully in any subsequent investigation.

65. DHL also requires supervisors to report and take seriously complaints of harassment.

66. DHL represents it will promptly investigate the allegations and communicate the results to the complaining party.

67. Female employees, including Taylor, Davis, Daughtery, Carter, Floyd, Green, Jordan, Bane, and other current and former female employees as a class, experienced severe or pervasive sexual harassment from the male employees in the workplace, namely leads, trainers, contract employees, supervisors, and managers.

68. The sexual harassment consisted of these male employees sharing photos of a penis and sexual exploits with a female employee's mother, and "macking [intercourse]" with a married female coworker with female employees.

69. The sexual harassment consisted of male employees, namely leads, trainers, contract employees, supervisors, and managers, asking females for dates, making unwelcomed lewd and offensive sexual comments to females about their bodies, touching on their backsides

and thighs, making comments about wanting to have sex with the female employees, and telling the current and former female employees the sexual things they wanted to do to the females, and managers engaging in sex with multiple female workers, and female employees walking in on employees engaging in sex.

70. Many of the females complained and reported the harassment to managers, supervisors, and human resources.

71. Human resources managers and other supervisors observed some of the harassment and took no action.

72. Some supervisors treated the harassment as gossip and discouraged the females from complaining about the sexual harassment.

73. Human resources ignored the oral and written complaints of sexual harassment from female workers.

74. In most cases, human resources failed to conduct an investigation.

75. In most cases, human resources failed to take any action against supervisors and managers for failing to report the harassment.

76. Some female employees who complained about the harassment received discipline.

77. Other female employees feared complaining about the harassment because it was so rampant and managers, supervisors, and human resources learned about it and did not take action.

78. Human resources terminated female employees who complained of sexual harassment.

79. Some female employees feared the sexual harassment they saw in the workplace and quit because of the sexually hostile work environment.

80. The unwelcome sexual harassment experienced by Taylor, Davis, Daughtery, Carter, Floyd, Green, Jordan, Bane, and other aggrieved former and current female employees was sufficiently severe or pervasive to alter the terms and conditions of their employment and to create a sexually hostile work environment.

81. The harassment detailed above unreasonably interfered with the female employees' work environment.

82. The effect of the unlawful practices complained of above has been to deprive Taylor, Davis, Daughtery, Carter, Floyd, Green, Jordan, Bane, and other aggrieved former and current female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

83. The unlawful employment practices complained of above are part of a continuing course of sex discrimination perpetrated by DHL against female employees at its facility located at 3300 Tchulatech Drive in Memphis, Tennessee 38118, that persisted since at least October 2021.

84. The unlawful employment practices complained of above were intentional.

85. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Taylor, Davis, Daughtery, Carter, Floyd, Green, Jordan, Bane, and other aggrieved former and current female employees.

### III.     RETALIATION CLAIM

86. Since at least on or around October 2021, Defendant engaged in unlawful employment practices at its facility located at 3300 Tchulatech Drive in Memphis, Tennessee 38118, in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a).

87. The unlawful employment practices involved subjecting Gibbs to retaliation by terminating her employment because she opposed and reported unlawful employment practices.

88. The Commission incorporates by reference herein, paragraphs 24 through 52.

89. DHL hired Gibbs as a tasker on October 27, 2021; she worked the second shift, Monday through Friday, from 4:00 p.m. to 12:30 a.m.

90. A week or so after DHL hired Gibbs, DHL hired Thomas as an operations manager.

91. Thomas supervised Gibbs and other employees.

92. Thomas' authority included recommending the immediate termination of employees.

93. Human Resources' review of such recommendations was ministerial - recording the information, signing off on the action, and providing notice to the terminated employee.

94. Thomas made daily comments to Gibbs about her looks, body, and clothes; asked her out on dates; tried to discuss personal, non-work-related matters, and tried to get Gibbs alone with him.

95. Gibbs avoided involvement with Thomas as much as possible because she feared he would harass her and he could fire her for any reason.

96. Gibbs told DHL management officials McComb and Watson about Thomas' comments and behavior; that she was uncomfortable around Thomas, and that she did not want to be alone with Thomas.

97. Some of Gibbs' conversations with McComb and Watson, about Thomas, occurred in Thomas' presence.

98. On December 18, 2021, Gibbs rejected Thomas' instruction to have a one-on-one interaction with him, because she was fearful of Thomas and what he would do to her if she was alone with him.

99. Thomas threatened to take Gibbs to Human Resources and said it would be her last day if she did not speak one-on-one with him.

100. Fearing Thomas would resume his harassing conduct, Gibbs refused to speak one-on-one with Thomas, instead requesting that other supervisory employees join the meeting.

101. Thomas denied Gibbs' request.

102. To avoid being alone with Thomas, Gibbs requested and received permission from Watson, to use her "bucket" of paid time off and leave for the day.

103. Before leaving, Gibbs advised McComb that Watson had given her permission to leave for the day.

104. Although Thomas knew that Gibbs did not want to be alone with him because of the harassment, Thomas followed through on his threat to report Gibbs to Human Resources for refusing to meet with him one-on-one.

105. Gibbs then received a call from Senior Human Resource Representative Crumbley, who advised Gibbs that an investigation into her conduct with Thomas, that day, had commenced.

106. Gibbs explained the situation, including her history of dealing with Thomas' daily, persistent sexual comments, and her resulting unwillingness to be alone with Thomas.

107. Without investigating Gibbs' sexual harassment complaint, and in retaliation for her opposition to and complaining about sexual harassment, DHL discharged Gibbs and issued her a separation notice dated December 21, 2021.

108. DHL had not issued previous discipline to Gibbs.

109. Fortenberry did not interview any non-management officials even though Gibbs identified a lead as her witness.

110. In direct violation of DHL's Policy, the lead refused to get involved in the investigation and never provided Fortenberry with an explanation.

111. Neither Fortenberry nor Crumbley disciplined or charged the lead with insubordination for refusing to comply with their order to sit for an interview.

112. DHL did not discipline the lead despite DHL's Policy notifying employees they were subject to discipline, including termination, if they failed to cooperate with an investigation.

113. The lead, however, had not complained about sexual harassment as Gibbs had.

114. DHL accepted Thomas' recommendation to terminate Gibbs in retaliation for complaints in opposition to Thompson's sexual harassment.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining DHL and its officers, agents, servants, and employees, and all persons in active concert or participation with it from subjecting Gibbs and current and former female employees as a class to a sexually hostile work environment.

B. Grant a permanent injunction enjoining DHL, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any unlawful retaliation against individuals who oppose employment practices reasonably believed to be unlawful under Title VII, or against individuals who assist, encourage, and/or support others who oppose employment practices reasonably believed to be unlawful under Title VII.

C. Order DHL to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

D. Order DHL to make whole Tazaria Gibbs by reinstating her employment.

E. Order DHL to make Tazaria Gibbs whole by providing appropriate back

pay and prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

    F.    Order DHL to make Tazaria Gibbs whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

    G.    Order DHL to make Tazaria Gibbs and a class of aggrieved current and former female employees whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

    H.    Order DHL to pay Tazaria Gibbs and a class of aggrieved current and former female employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

    J.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/Faye A. Williams
FAYE A. WILLIAMS

14

Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

MARKEISHA K. SAVAGE
Acting Supervisory Trial Attorney
TN Bar No. 24693
markeisha.savage @eeoc.gov

SARAH HOWARD JENKINS
Trial Attorney
AR Bar No. 97046
sarah.jenkins@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
(901) 685-4609